### D. C. ROGERS v. CONCHO CATTLE COMPANY.

Decided April 5, 1897.

1. **Sale of School Land.**

    A tract of land was surveyed and appraised by the surveyors and Commissioners Courts of both M. and C. counties, the county boundary as then surveyed and recognized running through the land, the title of a purchaser whose application was filed with the county surveyor of M. County was superior to that of a subsequent purchaser filing his application with the surveyor of C. County, both being forwarded to and approved by the Commissioner of the General Land Office and payments duly made, though by a subsequent settlement of the county boundary the land was found to be wholly in C. County. (Pp. 557 to 562.)

2. **Same—Power of Sale.**

    Construing laws for sale of school land, Act, April 6, 1881, and sec. 9, Act, July 8, 1879, held, that it was the duty of the applicant to forward to the Commissioner of the General Land Office the application and obligation to purchase and the general power to sell the land was vested exclusively in such Commissioner, who had power to sell such land, wherever situated, though application was made through the surveyor of the wrong county; and such Commissioner's acceptance of the contract vested a right in the purchaser. (P. 561.)

3. **Same—County Boundary.**

    The county line having been run by the proper officers of each county and recognized as the dividing line between the two counties, must be regarded as the true line, so far as it affects the rights of citizens acquired under officers acting in reference thereto, though there was an error in the location, afterwards corrected so as to place the land altogether in one county. (Pp. 561, 562.)

4. **Same—Application to Purchase—Wrong Certificate Number.**

    The statute does not require that the application to purchase should give the certificate number; and where that was incorrectly given, but the description otherwise was correct and sufficient to identify the land, the certificate number may be disregarded, though there was located within the county a certificate numbered as given in the application,—not corresponding, however, in other particulars with the land described in the application. (P. 562.)

5. **Trespass to Try Title—Improvements.**

    Defendant recovering value of improvements can not complain that the amount he was required to pay as the value of the land, in the alternative of plaintiff's failure to pay for the value of his improvements, was the full assessed valuation of school land only partially paid for by plaintiff, where the evidence showed the actual value of the land was equal to the amount he was required to pay, in addition to the balance of the unpaid purchase money. (Pp. 562, 563.)

ERROR to Court of Civil Appeals, Third District, in an appeal from Concho County.

The suit was trespass to try title, brought by the Concho Cattle Company against Rogers. The court directed a verdict for plaintiff. Defendant appealed, and on affirmance by the Court of Civil Appeals, obtained writ of error.

*H. C. Randolph, T. W. Gregory* and *G. W. Allen*, for plaintiff in error. —Where land is situated partly in one county and partly in another, the failure on the part of a purchaser from the State to have his field notes recorded in both counties does not invalidate the survey and sale.   Rev. Stats., arts. 4159, 4179; Bohannan v. Hemby, 23 Texas, 477.

Where the State sells a tract of land as being in one county and same is in fact in an adjoining county, the fact that there is a mistake in the location of the land does not invalidate the sale.

A mistake in the number of a certificate will not invalidate a survey if there are other means of identifying the land contained in the same instrument.   Stout v. Taul, 71 Texas, 441; Farris v. Gilbert, 50 Texas, 355; Pleasants v. Dunkin, 47 Texas, 357.

Where a county boundary line is defined and certain, even though erroneous, the Commissioners' Court has no power to change same by a resurvey.   Jones v. Powers, 65 Texas, 213.

The testimony showed that only five cents per acre had been paid by defendant in error and those under whom it claimed, and that the land in controversy was burdened with the ninety-five cents per acre still due the State; yet the judgment required the plaintiff in error to pay to defendant in error the full value of the land, as found by the jury, in order to avail himself of the rights he had by law if the defendant in error should fail to pay him for his improvements.

*Guion & Truly,* for defendant in error.—Under the facts and evidence undisputed and uncontradicted, it was the duty of the court—as he did, —to charge the jury to find for the appellee, the plaintiff in the court below, the land in controversy having conclusively been shown to be in Concho County.   Act, April 6, 1881, Genl. Laws, 1881, 119; Act, July 8, 1879, Genl. Laws, 1879, 25.

An application for the purchase of State school land made under the Acts of 1879, amended by the Acts of 1881, requires absolutely, that the application to purchase, the appraisement, the surveying, the payment of the whole or a part of the purchase money, the payment of taxes, the payment of interest and the return of field-notes, must each and all be made and done in and from the county in which the land is situated.

An application to purchase, survey, and payment of purchase money in and from a county other than the one in which the land is situated, is void and cannot form the basis of any valid claim to the land, either legal or equitable.   Sayles' Rev. Stats., art. 676; Acts 1879 and 1881,

supra; Sayles' Rev. Stats., arts. 4070, 1198, sec. 13,—arts. 752, 3834,. 3837, 3838a, 3923, 4330, 4333; Adams v. Hayden, 60 Texas, 223; Sayles' Rev. Stats., art. 4676.

A party purchasing State school land from a purchaser under the Acts. aforesaid, who had applied for ·and purchased same under said Acts, knowing at the time of said purchase and by the recitals in his own deed and from the facts shown in evidence that the land is situated in another and different county from that from where the same was applied for and originally purchased, is estopped from claiming any legal right or equity under his purchase from the original applicant and purchaser. Same authorities; also, Kimbro v. Hamilton, 28 Texas, 560; Brackenridge v. Howth, 64 Texas, 193; 72 Texas, 573.

Conceding that the boundary line between Concho and McCulloch Counties had been twice surveyed, to-wit:—in 1879 and in 1885, such surveying was ordered by the Commissioners Courts; the first survey was not shown to have been legally made; both were made under the orders of courts having no jurisdiction. And independent of the fact as to whether such line had ever been legally surveyed, marked and established in accordance with the statute, the evidence established without any conflict and by the act of appellant himself in purchasing the land, in accepting a deed describing the same as being situated in Concho County, that, in truth and in fact, said land was at the date of the original purchase thereof by the grantors of both parties actually situated from three-fourths, to one mile, within the limits of Concho County, and west of the western boundary line of McCulloch County, and that appellant knew it when he purchased. If either of the said lines is legal it is the line made and surveyed in 1885, as shown by the undisputed testimony. Kauffman County v. McGauhey, 32 S. W. Rep., 927.

BROWN, ASSOCIATE JUSTICE.—On the 8th day of April, 1893, the ·Concho Cattle Company filed its suit in trespass to try title against the defendant, D. C. Rogers, to recover 320 acres of land situated in Concho County, hereafter described.

The defendant pleaded not guilty, limitation of three years and valuable improvements made in good faith.

The land sued for was a part of the public domain set apart under the Constitution and laws of the State for the support of public free schools. Each party claimed the land under a different purchaser from the State and the application to purchase, payment of first installment, and of the interest for each year are all regular according to law in each purchase.

The material facts as found by the Court of Civil Appeals are that on May 10, 1881, the surveyor of McCulloch County submitted to the Commissioners Court of that county an appraisement of the school land situated in said county, in which appraisement was embraced a tract of land described as follows: "Survey number 6, block 70, 320 .acres located by certificate number 41-5233, issued to H. & T. C. R. R. Co.," which appraisement was approved by the Commissioners Court and returned to

the general land office and there approved by the Commissioner of the general land office of the State on June 6, 1881.

On the fifth day of December, 1881, A. M. Jamison made application in writing to the County Surveyor of McCulloch County to purchase land described as follows: "One-half section number 6, block number 70, in McCulloch County, about 18¼ miles north 55 degrees west from the center of the said county, surveyed for the Houston and Texas Central Railroad Company by virtue of certificate number 41-5233, describing the land by metes and bounds as follows: "Beginning at the N. E. corner of survey No. 1694, in the name of Julius Frederic, thence north 950 varas, thence west 1900 varas, thence south 950 varas, thence east 1900 varas to the place of beginning." The surveyor ran out the land by metes and bounds upon this application and forwarded the application in due time to the general land office of the State, where it was accepted and the sale of the land made to A. M. Jamison, who complied with the law in all respects for the purchase of the same.

Jamison conveyed to J. C. Dunn October 30, 1884, which deed was recorded on the same day in McCulloch County and in Concho County July 24, 1893. July 11, 1887, Dunn conveyed to D. C. Rogers by deed, which was recorded in McCulloch County December 31, 1888. About the first day of May, 1887, the defendant Rogers went into the actual possession of the land and began to make improvements upon it and continued in possession from that time forward.

In the year 1880 the County Surveyor of Concho County surveyed and appraised the land set apart to the public free schools situated in that county, including the land in controversy, which appraisement was approved by the Commissioners Court of said county and by the Commissioner of the general land office. In 1882 the County Surveyor of that county, at the request of the Commissioner of the general land office, made a corrected appraisement of the school lands in said county, which was reported and approved by the Commissioners Court of the county and the appraisement was returned to and approved by the Commissioner of the general land office.

On the 11th day of November, 1882, T. J. Caswell made application in writing to the County Surveyor of Concho County to purchase land described as follows: "One-half of section number 6, block 70, in Concho County, surveyed to the H. & T. C. R. R. Co., certificate No. 33-3300, describing the land in suit as follows: "Beginning at a stake, the southeast corner of survey No. 1736, in the name of Joseph Hollinghaus, thence east 1900 varas to a stake and mound, thence north 950 varas to southeast corner of survey number 5, made for the H. & T. C. R. R. Co., thence west with its south line 1900 varas to the northeast corner of survey number 1736, thence south 950 varas to the place of beginning, containing 320 acres;" which application was in all respects in conformity to the law, was returned to and accepted by the Commissioner of the general land office and Caswell executed his contract and made the first payment in accordance with the law under which he purchased. The plaintiff ex-

hibited a regular chain of title from T. J. Caswell to himself, all the deeds being dated prior to the 11th day of July, 1887.

In 1879 the Surveyor of McCulloch County, with R. H. Looney, who was appointed to represent the county of Concho, surveyed the line between the two counties, which, as surveyed by them, ran through the land sued for, which line was recognized as the line between said counties until 1885, when it was found to be incorrect and changed so as to place the land in Concho County. The record is very meagre as to the survey made in 1879, as well as that made in 1885.

At the time that Jamison made application to purchase the land there was situated in another part of the county a survey containing 640 acres located by certificate number 41-5233, issued to the H. & T. C. R. R. Co., but it was not in block number 70.

The trial court instructed the jury to find for the plaintiff, which was accordingly done, allowing to the defendant the value of his improvements, the land being valued at $1.25 per acre. From this judgment, the defendant below appealed, and the judgment was affirmed by the Court of Civil Appeals.

The rights of the parties in this case must be determined under the provisions of the Act of April 6, 1881, which provided for the sale of the free school lands in the several counties. (Genl. Laws, 1881, 119); and the ninth section of the Act of July 8, 1879, upon the same subject. (Genl. Laws, 1879, 25.)

Section 2 of the Act of 1881 required each County Surveyor of the several organized counties in the State in which school land was situated to view and appraise it and make a return under oath to the Commissioners' Court of his county, which court was required to examine the appraisement and if necessary to take evidence as to its correctness. If found correct, the Commissioners Court was to approve; otherwise, to disapprove the appraisement; and in the latter case the court itself would place a value upon the land. Section 3 made it the duty of each Commissioners Court to make out a tabulated statement of the appraisement of all the school land in that county, to forward one copy to the Commissioner of the general land office, another to the State Treasurer and to deposit one in the office of the County Surveyor of that county.

Under section 4 of the act the Commissioner of the general land office was required, upon receipt of the tabulated statement of appraisement, to examine it and if he thought necessary, to call for a supplemental report containing additional information. He was empowered to send a competent person to the county to make examination of the land and report the facts necessary to be known. This section contained the following clause: "From the information acquired from every source, the said Commissioner of the general land office shall correct the report transmitted by the County Commissioners Court, and forward a copy of such corrected tabulated report to the county or district surveyor of the proper county, to be by him kept as an archive of his office, and forward a

duplicate copy to the treasurer of the State and retain a copy in the general land office as an archive."

Section 5 authorized the surveyor of the county, in which the land was situated, upon receipt of the notice provided for in the fourth section of the act, to receive applications for the purchase of the said land. Under section 6 any person desiring to purchase any of the lands might make application in writing to the county or district surveyor, "designating the number of the survey, block, name of company or individual to whom was issued the certificate by virtue of which such survey was made; the quantity he or she wishes to purchase, and if less than a whole section, the particular part of such section;   *   *   *   *   The surveyor shall be entitled to a fee of $1 for each application, to be paid by the applicant, and he shall, upon payment of the said fee, record said application in a well bound book, to be kept by him for that purpose; he shall endorse such application 'recorded,' giving the date, page and volume of the record, and sign his name thereto and deliver said application to the proposed purchaser."   By section 7 the purchaser was required to immediately forward to the State Treasurer one-twentieth part of the appraised value of the land and the Treasurer was required to execute his receipt for said amount, to be forwarded by him with the application to the Commissioner of the general land office, who was directed to file the application and receipt and issue his certificate in lieu thereof.   Upon presentation of such certificate to the Surveyor within ninety days from the date of the record of his application the purchaser was entitled to have the land described in his application surveyed.

By section 8 of the said act it was made the duty of the applicant, upon delivering his application to the Surveyor, to execute his obligation or promissory note for the balance of the appraised value of the land which he desired to purchase, agreeing and stipulating to pay to the Governor of the State of Texas and his successors in office on the first day of each year one-twentieth of the amount of his obligation, with eight per cent interest on such amount of the principal as may be due at the date of each payment, giving in said obligation such description of the land purchased as is contained in his application.   The note or obligation so executed by the purchaser he was required to forward to the Commissioner of the general land office to be registered and recorded in that office.

We have thus given at length the provisions of these acts in order that the powers and duties of the several officers who were required to take part in making sales of these lands may be understood.   The provisions of the law which required the Surveyor of the county to make appraisement of the land to be approved by the Commissioners Court of each county simply designated the means by which the Commissioner of the general land office could acquire the information necessary to enable him to exercise the power conferred upon him.   The Surveyor was designated to receive and record the application of the purchaser, that a record of it might be made in the county to prevent him from receiving other applications for the same land thereafter.   The application when

recorded by the surveyor, was returned to the purchaser, who forwarded it with his obligation, payable to the State, as well as the payment of one-twentieth of the purchase price of the land. Section 9 of the Act of 1879 referred to above does not expressly say that the obligation is to be forwarded by the purchaser, but it says that it is to be forwarded to the Commissioner and it does not provide that it shall be forwarded by any other person, and we conclude that it was the duty of the applicant himself to send his obligation or note to the Commissioner of the general land office. When the Commissioner of the general land office was satisfied with all of the proceedings of appraisement, application to purchase and the obligation, he issued his certificate of purchase to the applicant, describing the land sold by the State, by which the Surveyor was authorized to make survey thereof. It seems to us clear that the general power to sell the land was vested exclusively in the Commissioner of the general land office and that he had power to sell the land belonging to the free schools wherever situated in the State. If, therefore, a mistake was made in sending the application from the wrong county or through a surveyor of the wrong county and that application was accepted and the contract for the payment of the purchase price as well as the advance payment received by the State upon which the certificate of purchase issued, this would vest a right in the purchaser that could not be disputed by any third person.

The Surveyors of Concho and McCulloch Counties each appraised the land in controversy and the Commissioners Court of each county approved the appraisement made by the Surveyor thereof. The application under which Rogers claims was the first made and was presented to the Surveyor of McCulloch County. In 1879 the Surveyor of McCulloch County, together with the Surveyor of Concho County, who was appointed to represent that county, ran the line between these two counties and as thus run by them it passed through the land in controversy, putting a portion of it in each county. The record does not fully show that this survey was made strictly according to law, but it justifies the conclusion that the surveyors who ran the line were properly authorized by their counties to do so. We are of opinion that this line having been run by the proper officers of each county and having been recognized as the dividing line between the two counties, it must be regarded as the true line so far as it affects the rights of citizens acquired under the acts of officers who believed it to be the true line and acted with reference thereto, although it may turn out that there was an error in the location of the line which was afterwards corrected and which placed the land altogether in Concho County. Jones v. Powers, 65 Texas, 214; Hamilton v. Menifee, 11 Texas, 718.

In the case of Jones v. Powers, above cited, the proof was, "that when Rockwall County was first organized a line was run dividing it from Kaufman County by proper surveyors, and marked upon the ground;" and this court said: "The inferences from the record before us are that the line between Kaufman and Rockwall Counties had been legally established

before the deed under which the defendant's claim was recorded in the latter county, and that the land was then in that county, as shown by the lines then established, but since that time the line has been established at another place, which excludes the land from the county in which the deed was registered." It is true that in that case the court intimates that if the line was not legally established between the two counties the record of the deed in Rockwall County would not be valid, but we are of opinion that if the question had been before the court it would not have been so held. The line shown to have been run in 1879 between Concho and Mc-Culloch Counties was so run by the surveyors of the two counties and citizens had a right to regard it as the true and proper line until changed, and it would be a dangerous precedent if we should hold that the technical errors of the courts in the manner in which they establish a county line would render invalid the acts of all officers, courts and citizens who might be governed by such line in discharge of their duties and in the transaction of their business.

The sale made to A. M. Jamison by the State was a valid sale of the land and superior to that subsequently made to T. J. Caswell unless the description given in the certificate of purchase and application of Jamison is insufficient to identify the land in controversy as being that which he purchased. The Court of Civil Appeals so held because the application of Jamison gave the wrong certificate number. In this we think that the Court of Civil Appeals committed error.

The law did not require the number of the certificate by virtue of which the land was located to be given in the application or in the certificate of purchase. The description of the land as contained in the application of Jamison specifies every requirement expressed by the statute. If we disregard the number of the certificate and apply the description as given, which the law required to be stated, then it is a perfect description of the land in controversy. If, in addition thereto, we test the identity by the field notes as given, we find that the distances and the courses of the several lines of the survey correspond precisely. If we attempt to apply the description to the other survey number 6, located by virtue of certificate issued to H. & T. C. R. R. Co., number 41-5233, we find that this survey is located in a different part of the county from that called for by the field notes set out in the application. It is in a different numbered block of surveys, and for twice the quantity of land specified in the application for purchase. In fact, it can in no respect be applied to the latter survey except in the number of the survey and the number of the certificate. The number of the certificate as given in the application was a false description and should be disregarded. To hold otherwise would be to permit that which is false to overthrow and destroy that which is correct and certain.

The plaintiff in error complains that under the judgment of the District Court he would be required to pay to the defendant in error the full assessed value of the land in order to protect his improvements in case the plaintiff in error did not pay for them, and that there remained upon

the land unpaid purchase money of 95 cents per acre in favor of the State under the contract by virtue of which the defendant in error claims the title. An examination of the record shows that the plaintiff in error himself testified that the land was worth from $1.50 to $2.50 per acre, under which the jury might have found that it was worth $1.25 per acre in addition to the balance of the unpaid purchase money.

It is ordered and adjudged that the judgments of the District Court and Court of Civil Appeals be reversed and that the Concho Cattle Company take nothing by its suit, and that D. C. Rogers go hence without day and recover of the Concho Cattle Company all costs expended.

*Reversed and rendered for appellant.*