**BETTINGER v. NORTH FORT WORTH ICE CO.** (No. 11571.)

(Court of Civil Appeals of Texas. Fort Worth. Nov. 21, 1925.)

**1. Injunction ☞118(2) — Petition to enjoin violation of agreement not to deliver ice on former route sufficient.**

Petition to enjoin former employé from violating agreement not to deliver ice on certain route for year after termination of employment *held* to sufficiently allege injury and absence of legal remedy to warrant injunction.

**2. Specific performance ☞49(2)—Agreement of employé with ice company not to deliver ice on same route after termination of contract held supported by consideration.**

Agreement of employé, who had worked for ice company 8 years delivering ice, that he would not deliver ice on certain route for a year after ceasing in that employ, *held* enforceable, in view of showing that he would have been discharged if he had not signed agreement; continued employment being sufficient consideration.

**3. Contracts ☞10(1)—Breach of covenants by one receiving consideration cannot be excused because contract unenforceable.**

Where party to contract has actually received consideration under it, he cannot excuse breach of covenants on ground that contract could not have been enforced.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
\*Writ of error dismissed for want of jurisdiction February 3, 1926.

**4. Contracts ⬤⟹141(1)—Between employé and employer, prohibiting former from working for competitors, closely scrutinized.**

Contract between employé and employer, providing that former shall not work for a competing company, or operate a competing business, or sell goods in a designated territory, will be given the closest scrutiny, and burden of showing its reasonableness is on the one seeking to enforce it.

**5. Contracts ⬤⟹116(1)—Tending to destroy legitimate competition in trade are void.**

Contracts tending to destroy legitimate competition in trade are against public policy, and void.

**6. Good will ⬤⟹5—Sale of good will of business may be secured by negative covenants.**

Purchaser of an established business may include purchase of good will built up by seller which may be secured to purchaser by contract containing negative covenants, such as not to compete, reasonably necessary for the purpose.

**7. Contracts ⬤⟹116(2)—Agreement of employé not to compete after employment ceases enforceable, if necessary to protect business of employer.**

A covenant of an employé not to compete or work for competitor after termination of his employment is enforceable in so far as it is reasonably necessary to protect the business of the employer or the good will thereof.

**8. Injunction ⬤⟹189—Ice deliveryman should be enjoined from delivering ice in violation of former contract only on former route.**

Where ice deliveryman violated agreement in former contract of employment that he would not deliver ice on same route for a year after termination of contract, he could be enjoined from so doing, but an injunction against his delivering ice within five squares on either side of his former route was unauthorized, especially in absence of showing that he had delivered ice in that territory or was threatening to do so.

**9. Injunction ⬤⟹148(1)—Bond required before issuance of writ.**

Ordinarily a bond, providing that plaintiff be bound and liable for any damage suffered by defendant by reason of improper issuance of writ of injunction, is required before issuance of writ.

**10. Appeal and error ⬤⟹456—Court of Appeals may authorize bond and validate injunction, where no bond was filed before writ granted.**

Where trial court does not require bond to be filed before issuance of writ of injunction, the Court of Civil Appeals may, in exercise of its discretion, authorize requisite bond to be filed in district court, approved by district clerk, and to provide that plaintiff be bound and liable for damages suffered by defendant by reason of improper issuance, thereby validating a writ otherwise voidable.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Suit by the North Fort Worth Ice Company against Frank Bettinger. Judgment for plaintiff, and defendant appeals. Judgment reformed, and affirmed as reformed.

Mays & Mays and D. T. Miller, all of Fort Worth, for appellant.

Baskin, Eastus & Greines, of Fort Worth, for appellee.

BUCK, J. The North Fort Worth Ice Company, a corporation, filed an application for injunction against Frank Bettinger, seeking to enjoin him from soliciting, selling, delivering, or furnishing ice, directly or indirectly, either for himself or as the agent for any person, firm, corporation, or association, within a certain territory and prescribed route, for a period of one year from the date when said Frank Bettinger ceased to work for the petitioner, to wit, on September 17, 1925. It was alleged that the defendant entered into a written contract of employment with the plaintiff on March 1, 1924, whereby the said defendant was employed by the said plaintiff to act as a driver of one of its ice wagons, and in soliciting, selling, and delivering ice along a certain route in the city of Fort Worth, assigned to him by said company.

The contract of employment, attached to plaintiff's petition and introduced in evidence, provided that the defendant, designated the driver, bound himself to observe all the rules of the company, and to devote his entire and best attention to the company's business. It was further provided that either party might terminate this agreement upon 15 days' written notice, but that the company might discharge the driver at any time for the following reasons: Violations of its rules; insubordination; incivility to its patrons; failing to account promptly and properly for money or property belonging to the company; inattention to its business; unsatisfactory results from the route or improper handling of his outfit; or no need for his services.

It was further provided that the agreement should be in force as often as the driver should be employed by the company, whether his employment was continuous or not.

The contract contained the following:

"In consideration of the premises, driver agrees not to engage in the ice business directly [or] indirectly within the territory covered by the route or routes of which he may have had charge while in employ of company or within five squares of same for a term of one year immediately after his employment shall have ceased, whatever the reason, either for his own account or as agent or employé of any person, persons, corporations, or other entity, by canvassing or soliciting trade, by selling or delivering ice, by establishing, or endeavoring to establish, or pretending to establish, an ice route by selling or transferring or giving any one any right he may claim to have acquired in an ice route, nor shall driver assist any one in doing

the foregoing acts or give any information regarding said route or routes.

"This agreement is made for the protection of the good will and business which may have been or may hereafter be acquired upon said route or routes, and in consideration of this agreement driver does here assign and convey to company all interest in good will and business upon said route or routes either existing or hereafter to be acquired or claimed by him in any manner.

"Any re-employment from time· to time of driver by company is hereby mutually recognized and accepted as a renewal· of and ancillary to this original contract the same as if re-executed by each and both without the necessity of actually executing a new contract, the provisions as to time and restrictions dating from last employment.

"Each of the parties thereto have read the foregoing, and affirm that they fully understand same."

The plaintiff presented the application to the judge of the Forty-Eighth judicial district court of Tarrant county on September 24, 1925, who made the following order:

"The clerk is directed to issue notice to the respondent herein, citing him to be and appear before this court on September 29, 1925, at 5 o'clock p.'m. to show cause why the writ of injunction should not be issued as prayed for."

On September 29th defendant or respondent filed his answer, consisting of a general demurrer, a general denial, and a special exception to plaintiff's petition, in that, as claimed, it failed to allege that defendant was selling ice to any of plaintiff's customers or taking any of its customers away from. it, or that he was selling to any such customers within the territory or radius complained of, or that he would do so unless restrained, and it wholly failed to set forth any state of facts showing that petitioner had or will suffer any damage or injury either in its good name, good will, or reputation, or from a financial standpoint. He further excepted to plaintiff's pleadings because they were alleged to be vague, uncertain conclusions of the pleader, and argumentative, and did not directly allege any character of damages that had accrued or would accrue to plaintiff. He further pleaded that the contract relied upon by plaintiff, and made between the plaintiff and the defendant, was null and void for lack of mutuality, and that it was unilateral. He pleaded that at the time he signed the contract he had been working for the plaintiff company 8 years, and that there was no consideration shown, and in fact there was none, to sustain the contract. He further pleaded that the contract was null and void, in that it deprived him of the right to work and follow his business, and that it was in restraint of trade and against public policy. He further pleaded that the reason 'he quit work for the plaintiff was because the plaintiff demanded that he, the defendant, sell and deliver to its patrons ice, charg-ing the customers for the loss in weight from the melting of the ice. Probably other pleaded defenses will be noticed in the course of our opinion.

The court heard the evidence, consisting of the testimony of P.'A. Heeger, who was the president and a stockholder of the ice company at the time the contract of employment was entered into with defendant, but who had sold out his stock, and had resigned his office subsequently; also the testimony of J. D. Little, the present president of the company. The contract of employment was offered in evidence. The court gave judgment for the petitioner, issuing a temporary writ of injunction against the respondent, prohibiting the respondent from selling and delivering ice along the designated route, and within five squares thereof. The court found as a fact that the provision and covenant in the contract that the respondent would not engage in the selling of ice, either for himself or for others, along this route, and within five squares thereof, was a material inducement and reason for the employment of said respondent by the petitioner, and that the petitioner would not have employed said respondent nor assigned him to said route upon which he was engaged during his employment except and unless respondent had agreed to and had signed said contract, and particularly the covenant referred to. The court further found that during the time from the execution of the contract until the defendant voluntarily terminated his employment with petitioner that the petitioner paid him approximately the sum of $2,200, that, the route which had been assigned to defendant was established and maintained by said petitioner at a great expense and cost; that the petitioner had been engaged in said ice business in said territory for many years, and had established a large and valuable ice business in the city of Fort Worth and vicinity thereof, and particularly on said route to which the respondent was assigned while in the employment of the petitioner. The court further found that the respondent, since the termination of his employment, on September 17, 1925, had engaged in the ice business, and in the sale and delivery of ice within the territory and upon the route, and 'district above described, and over which he was assigned while in the employment of the petitioner, and was continuing to so engage in the sale and delivery of ice in and upon said route, and would so continue so to do, to the injury and detriment of the petitioner. The court further found that, by reason of said facts, the petitioner was entitled to a temporary writ of injunction enjoining respondent from selling ice in the territory described in the contract of employment. The respondent has appealed from the decision of the court below.

[1, 2] The first and second propositions of

appellant's brief are directed against plaintiff's petition, and urge that the petition, on account of its vagueness and generality, fails to allege specifically a state of facts showing irreparable injury, or makes specific allegations showing any injury at all, and that therefore the petition is insufficient to sustain the temporary injunction granted.

We have examined the petition, and, while it is not as specific as it might be in its allegations of injury, we think the petition as a whole does allege in direct terms the injury to the petitioner of defendant's alleged acts, and that the petitioner, on account of defendant's insolvency, is without remedy in law, and will suffer irreparable injury, unless the defendant is restrained by the equitable remedy of injunction. It is further urged that the contract shows upon its face to be unilateral, and such a contract will not support an action for specific performance. We think that the contract imports a valuable consideration moving from petitioner to defendant, to wit, the further employment of defendant. Mr. Heeger testified that, while he did not tell the defendant at the time of the conversation with reference to the signing of the contract that, if the defendant did not sign the contract, he would be discharged, yet he told him that all of the employés had signed, or would have to sign, the contract, and he stated that, if defendant had not signed the contract, he would have had to discharge him. Moreover, this contract was entered into on March 1, 1924, and the parties thereto operated thereunder until September 17, 1925, when defendant voluntarily quit the employment of the plaintiff. One cannot successfully plead a want of consideration, or unilateralness, in a contract which he has performed in whole or in part.

[3] In Storm v. U. S., 94 U. S. 76, 24 L. Ed. 42, the United States government had contracted with Storm for the sale and delivery of forage and straw. It was stipulated in said contract that the forage and straw should be of the best quality on the market, and, if in the opinion of the commanding officer at the place of delivery it was unfit or of a quality inferior to that prescribed by the contract, that a survey should be held by officers designated by the commanding officer, and that the board of survey should have power to reject the whole or such portions of same as appeared unfit for use or of quality inferior to the contract. Said contract further provided that it might be terminated at such time as the quartermaster general might direct. The United States brought suit on the bond given to secure the faithful performance of the contract, and, when the contract was offered in evidence, the defendant objected to its admissibility on the ground that it appeared on its face that it might have been terminated at any time at the election of the plaintiff; that it was therefore not mutually binding, without consideration, inoperative, and void. The court held the contract to be valid, and from the opinion of the Supreme Court we quote the following:

"Beyond doubt, the written agreement went into operation; and it is not even suggested that the department and division commanders ever expressed any disapproval of its terms and conditions, nor does the record furnish any evidence to raise a doubt that it was fully approved by all whose assent was necessary to give it a binding obligation. Suppose it to be true that the quartermaster general might terminate it, if he should see fit; it is a sufficient answer to the suggestion to say, that he never did interfere in the matter, and that the contract continued in full force and operation throughout the whole period for which the necessary supplies were purchased by the United States in open market.

"Where the defendant has actually received the consideration of a written agreement, it is no answer to an action brought against him for a breach of his covenants in the same to say, that the agreement did not bind the plaintiff to perform the promises on his part therein contained, provided it appears that the promises in question have, in fact, been performed in good faith, and without prejudice to the defendant. Add. Cont. (6th Ed.) 15; Morton v. Burn, 7 Ad. & Ell. 25.

"Agreements are frequently made which are not, in a certain sense, binding on both sides at the time when executed, and in which the whole duty to be performed rests primarily with one of the contracting parties. * * *

"Cases often arise where the agreement consists of mutual promises, the one promise being the consideration for the other; and it has never been seriously questioned that such an agreement is valid, and that the parties are bound to fulfill their respective stipulations. * * *

"Such a defense could not be sustained even if the action was upon a simple contract."

See Texas Farm Bureau v. Stovall, 113 Tex. 273, 253 S. W. 1105; Tex. Cent. Ry. Co. v. Eldredge (Tex. Civ. App.) 155 S. W. 1010; Frary v. American Rubber Co., 52 Minn. 264, 53 N. W. 1156, 18 L. R. A. 645, by the Supreme Court of Minnesota; East Line & Ry. Co. v. Scott, 72 Tex. 375, 10 S. W. 706, 3 L. R. A. 567, 13 Am. St. Rep. 805.

[4] It is urged that a contract binding a person to refrain from pursuing a lawful occupation is prima facie contrary to public policy, and void, and it devolves upon the party asserting its enforcement to show its reasonableness, and that its enforcement is necessary to a reasonable protection of its business. We agree with the proposition that one seeking to enforce the terms of a written contract between an employer and an employé, and providing that the employé shall not work for a competing company or operate a competing business, or sell goods in a designated territory, is one that the law looks upon with the greatest scrutiny, and the burden of showing the reasonableness of the contract is upon him who seeks to enforce it.

[5, 6] J. D. Little, president of the ice company, testified that the North Fort Worth Ice Company had been engaged in said business in said territory for many years, and had established a large and valuable ice business in the city of Fort Worth and vicinity thereto, and that the company enjoyed the confidence and good will of the people in this and other routes. The recent case of City Ice Delivery Co. v. Evans, 275 S. W. 87, the Dallas Court of Civil Appeals, is with reference to the enforcement by injunction of some of the terms of a similar contract of employment. In the cited case the court said:

"It will be noted that the service of appellee to appellant under the terms of the contract and under the evidence in this case was not what is usually termed that of a common laborer. It was appellee, and those who held kindred positions, upon whom rested in a great measure the success of the business that gave appellee employment. The new customers to be won to the business and the old customers to be retained in the business necessarily very largely depended upon the work of appellee and his coemployés. * * *

"It is a general rule of law, as urged by appellee. that all contracts and covenants whose tendency is to destroy legitimate competition in trade, are against public policy and void. This rule, however, finds no application in the instant case, for the reason that the covenant in the contract in question manifestly has no such tendency.

"It is the settled law of this state that a purchaser of an established business may include in such purchase the good will of the business that had been built up by the seller, and that this good will may be secured to the purchaser by agreement or contract containing such negative covenants as are reasonably necessary for such purpose. Such covenants are not considered an unlawful infringement of the liberty of the seller to engage in business. Such seller is merely making secure that which he had sold for a consideration. Gates v. Hooper, 90 Tex. 561 [563], 39 S. W. 1079; Crump v. Ligon, 37 Tex. Civ. App. 172, 84 S. W. 251; Erwin v. Hayden (Tex. Civ. App.) 43 S. W. 611; Anderson v. Rowland, 18 Tex. Civ. App. 460, 44 S. W. 912."

[7] While the validity of the covenants by employés not to engage in a similar or competing business, either for themselves or for others, for a definite period of time following the termination of a contract of employment in which the covenant is incorporated, seems not to have been passed upon by the courts of this state as frequently as it has been in other jurisdictions, yet their validity is necessarily controlled by the same general principles upon which the validity of like covenants in the sale of an established business is controlled, and the weight of authority in other states is that such covenants are valid. The test generally applied to determine the validity of such a covenant is whether or not restraint placed upon the employé, after the employment has ceased, is necessary for the protection of the business or good will of the employer, and whether it imposes upon the employé any greater restraint than is reasonably necessary to procure protection to the business of the employer or the good will thereof. If the covenant goes no farther than to accomplish this purpose, it is generally held to be valid. Eureka Laundry Co. v. Long, 146 Wis. 205, 131 N. W. 412, 35 L. R. A. (N. S.) 119; American Ice Co. v. Lynch, 74 N. J. Eq. 298, 70 A. 138; authorities collated in notes, 9 A. L. R. pp. 1467 to 1478, 20 A. L. R. pp. 864 to 869, and in notes in 20 A. L. R. pp. 1331 to 1334. The assignment of error is overruled.

[8] We are of the opinion that the trial court erred in issuing the injunction so as to extend, not only to the territory covered by the defendant's former route, but as to the five squares or blocks on each side thereof. The evidence fails to show that defendant has sold any ice or solicited any citizens, or done anything towards supplying those citizens living on and within those five squares or blocks of the route, with ice. The only testimony with reference to any acts of the defendant contrary to the terms of his contract was that J. D. Little testified that—

"Since Bettinger severed his connection with the company on September 17th, I have seen him deliver ice to houses in this district. I have seen that four or five times in this same territory over which he formerly drove a wagon for the company. He was delivering ice. I saw him carrying ice into the houses. I saw him take the ice from his wagon and carry it into the house. It was not an ice wagon of the North Fort Worth Ice Company from which he got the ice, and it was not ice that then belonged to the North Fort Worth Ice Company."

If this testimony be construed, as it seems it should, to mean that J. D. Little saw the defendant delivering ice on the route which had been assigned him during his employment with the plaintiff company, then the evidence fails to show any violation, or attempted violation or threatened violation, of the terms of the agreement made by defendant in his contract with plaintiff as to the five squares on either side of his former route. While he might be liable, in damages, in a strictly legal proceeding, for selling ice, either directly or indirectly, within the territory, including the five squares on either side of the route formerly assigned him, yet in an equitable proceeding like this we do not think that a man should be enjoined from doing an act which he has not done, and not attempted to do, and has not threatened to do. An injunction is a harsh and mandatory process, and should not be allowed to go further than to restrain a person from doing a thing which he has done or has attempted to do, or has threatened to do. Therefore the judgment below will be reformed so as to exclude from the territory in which defendant has been restrained from selling ice the five squares on either side of the

route described in the petition and in the contract.

[9, 10] It appears that the trial court did not require a bond to be filed before the issuance of the writ, and that no bond was filed. Appellant urges that such failure is vital to the temporary injunction granted. He cites a number of cases, including Boykin v. Patterson (Tex. Civ. App.) 214 S. W. 611; Ex parte Coward, 110 Tex. 587, 222 S. W. 531, by the Supreme Court; Ricker, Lee & Co. v. Douglass Bros., 75 Tex. 180, 12 S. W. 975; Paine v. Carpenter, 51 Tex. Civ. App. 191, 111 S. W. 430, to sustain his contention. But in most of the cases cited the writ was issued without any evidence having been heard and without the respondent having had an opportunity to either answer or introduce evidence. It is true that in many cases courts use the expression that a proceeding granting an injunction without a bond being given is null and void. But it appears to us that the expression used was in the sense of voidable rather than void. We agree that a bond was required in order to issue the writ granted; but are further of the opinion that this court may, in the exercise of its discretion, authorize a requisite bond to be filed in the district court, approved by the district clerk, and that this bond provide that plaintiff is bound and liable for any damages suffered by defendant by reason of the improper issuance of the writ, from the time of such issuance, and it appears such bond has been filed in the court below, and a certified copy thereof has been filed in this court. For this course we have ample authority. El Campo Light, Ice & Water Co. v. Water & Light Co., 63 Tex. Civ. App. 393, 132 S. W. 868, by the Galveston Court of Civil Appeals; Oil Lease & Royalty Syndicate v. Beeler (Tex. Civ. App.) 217 S. W. 1054, writ of error refused. The bond having been filed in the district court in the sum of $500, in accordance with the tender of appellee in this court, such action is approved, and the judgment is affirmed as reformed. The costs of appeal are adjudged against appellee.