**HOTEL & RESTAURANT EMPLOYEES' INTERNATIONAL ALLIANCE & BARTENDERS' INTERNATIONAL LEAGUE OF AMERICA et al. v. LONGLEY et al.**

No. 2230.

Court of Civil Appeals of Texas. Eastland.

Feb. 6, 1942.

William McCraw, of Dallas, for appellants.

Bouldin & Bouldin, of Mineral Wells, for appellees.

FUNDERBURK, Justice.

 This is an appeal from a judgment of the court below granting a temporary injunction. Neither party has filed a brief and the record is without assignments of error. Generally, under these circumstances the appeal would be dismissed, or the record examined for fundamental error and the judgment reversed or affirmed as such error may or may not be manifest.

Haynes v. J. M. Radford Groc. Co., 118 Tex. 277, 14 S.W.2d 811.

However, the appeal being from an interlocutory order granting a temporary injunction, a special provision, different from the general provisions relating to briefs and assignments of error, controls. The Revised Statutes 1925, Art. 4662, purportedly repealed as of September 1, 1940, provided in part that "Such case may be heard in the Court of Civil Appeals or Supreme Court on the bill and answer and such affidavits and evidence as may have been admitted by the judge of the court below." The quoted provision of said former statute is continued as a part of Rule 385 of the Texas Rules of Procedure.[1]

This question here suggests itself: In reviewing the proceedings of a trial court culminating in a judgment granting, or refusing, a temporary injunction, or dissolving or, upon motion refusing to dissolve a temporary injunction, from which judgment an appeal has been taken, but no assignments of error or briefs filed, what is the nature and extent of the duty of the appellate court? Should the reviewing court regard each and every action or ruling of the trial court, shown by the record, as though it were assigned as error and proceed to determine which, if any, of such assignments should be sustained, and which, if any overruled? Or, would the court discharge its full duty by examining the record for fundamental errors and making disposition of the appeal accordingly as one or more fundamental errors may or may not be shown? To illustrate the effect of the difference suggested by these two questions: From the statement of facts in this case, it appears that after both parties had rested and (as defendants claimed) defendants had discharged their witnesses who had gone to their homes in another county, the court reopened the case to permit plaintiffs to introduce additional testimony from a number of witnesses. It may be that but for that action of the court, the case would not have been appealed. About that, we have no way of knowing. Where a court grants or refuses a temporary injunction

---

[1] The further provision of said statute reading: "If the appellant desires to file a brief in said appellate court he shall furnish the appellee with a copy thereof not later than two days before the case is called for submission in such court, and the appellee shall have until the day the case is called for submission to answer such brief" has, so far as our investigation discloses, not been revived by any provision of the Texas Rules of Civil Procedure.

126

upon notice and hearing (as must now be done in all cases according to Rule 681 of the Texas Rules of Procedure), it is apparent that there may be as many different actions or rulings which could be assigned as error as there would be in a trial of the case upon its merits. If the appellate court is under duty in hearing such an appeal to regard every action or ruling as though assigned as error, then the parties by declining to file assignments of error or briefs in addition to escaping the work involved, thereby avoid a waiver of error in any action or ruling of the court; but, at the same time, impose a much greater burden upon the court. Early in the history of our jurisprudence, provision was made for assignments of error. Paschal's Digest, Art. 1591. Such provision declared as one of its results that "all errors not so distinctly specified shall be considered by the Supreme Court as waived." Id. There has, perhaps, never been any single provision enacted which, to a comparable extent, was so effective to expedite the dispatch of business in the appellate courts.

But it is settled that upon an appeal like this, assignments of error and briefs are not required. Ft. Worth Improvement Dist. No. 1 v. City of Ft. Worth, 106 Tex. 148, 158 S.W. 164, 48 L.R.A.,N.S., 994. That not merely fundamental errors are to be considered is indicated by the provision of the statute that such a case "may be heard in the Court of Civil Appeals or Supreme Court" not only "on the bill and answer" but also "such affidavits and evidence as may have been admitted by the judge of the court below." Fundamental errors are manifested by the record regardless of the evidence. The mention of this matter is preliminary to the suggestion that legislative action would seem to be desirable in the public interest of expediting the dispatch of business in the appellate courts.

We are unable, however, to satisfy our minds that our duty is as all comprehensive as an affirmative answer to the first of the two questions above would imply. Suppose the only action or ruling of the court which constituted the reason for the appeal was in sustaining an objection to the introduction of testimony. In such case, "the bill and answer and such affidavits and evidence as may have been admitted by the judge of the court below" would not reflect either such action or the nature of the ex-

cluded testimony. There would theretofore in such case seem to be no authority for the appellate court to pass upon such a question in the absence of a bill of exception and assignment of error. The most reasonable construction of the statute, as defining the duty of the appellate court, would seem to be that in the absence of any brief or assignments of error such duty is limited to a determination of whether according to the "bill and answer and such affidavits and evidence [if any] as may have been admitted by the judge of the court below", the judgment was not proper.

Upon consideration of the "bill and answer and such affidavits and evidence" as were "admitted by the judge of the court below" it does not appear to us (at least not clearly and certainly so, which we understand to be the proper test to guide us) that the order granting the temporary injunction in this case was not proper.

Plaintiffs, as shown by the allegations in their bill, did not seek to restrain defendants in any such way as to abridge their freedom of speech as vouchsafed by the Constitution of the United States, Amendment 1, and the Constitution of Texas, Art. 1 § 8, Vernon's Ann.St. There is a difference between speech or the expression of purported facts or opinions, whether written or oral, on the one hand, and conduct (which may involve speech only incidentally) on the other. Freedom of speech, even when abused, may not be enjoined; but conduct such as threats resulting in intimidation or coercion, to the injury of another, and in violation of his natural or contractual rights, may be enjoined. Ex parte Tucker, 110 Tex. 335, 220 S.W. 75.

It is deemed unnecessary to detail allegations of the plaintiffs' petition which, if sufficiently supported by evidence and the issues found in favor of plaintiffs, would, in our opinion, support the judgment here under challenge. It is sufficient, we think, to say that in our opinion the allegations were sufficient.

Regarding the evidence we are required, of course, to give effect to such as was undisputed and not subject to any qualification or variance as the possible result of the judge's exercise of his power to determine its weight or to determine the credibility of the witnesses. Of all disputed

evidence we are required to consider only that most favorable to the plaintiffs. Further, of all reasonable inferences which may be drawn from such evidence. we are required to adopt only those, if any, favorable to plaintiffs. Observing these tests we think the court may have been warranted in concluding that the strike of plaintiffs' employees and the picketing of plaintiffs' places of business were but parts of the means of carrying out a purpose and intention of third parties, to coerce plaintiffs into signing a particular contract; that there was no bona fide dispute between plaintiffs and any of their employees regarding their employer-employee relationship; that some of plaintiffs' employees were induced to join the Union, to join in the strike and engage in the picketing as the result, partly of false representations, and partly of coercive threats; that the picketing was not done in the exercise of any right purportedly declared by R.S.1925, Art. 5153 "to induce or attempt to induce by peaceable and lawful means, any persons to * * * quit or relinquish any particular employment or pursuit in which such persons may then [have been] engaged"; but, on the contrary, to effect a boycott of plaintiffs' businesses and because of the consequent loss of trade or business, to coerce them into signing a contract they were not willing to sign.

 In the American way of life there are, as declared in the historical Declaration of Independence, some rights which are "unalienable." As said in Allgeyer v. State of Louisiana, 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832, quoted by Chief Justice Conner in Webb v. Cooks', Waiters' & Waitresses' Union, Tex.Civ.App., 205 S. W. 465, 468, "'The right to follow any of the common occupations of life is an inalienable right. It was formulated as such under the phrase "pursuit of happiness" in the Declaration of Independence. * * * This right is a large ingredient in the civil liberty of the citizen.'" Exactly the same thing is true, we should say, of the right to make a lawful contract. "All persons who are sui juris are free to make whatever contracts they please as long as no fraud or deception is practiced and the contracts are legal in all respects. The right to acquire, to hold and to dispose of property includes, in general, the right to make contracts." 12 C.J. 949, § 460; 16 C.J.S., Constitutional Law, § 210. The right of contract under

any circumstances under which it may exist necessarily implies the right to refuse to contract. Any contract which one may make under constitutional protection of his right of contract, he may refuse to make under the same constitutional protection. There is, in our opinion, no lawful power, legislative, executive or judicial in this state, or in this Nation, to authorize picketing of a man's place of business as part of the means of effecting a boycott designed to coerce, the owner into signing a contract he otherwise would not sign.

It is, therefore, our conclusion that the judgment should be affirmed and it is accordingly so ordered.