### CARLETON v. DIERKS et al.
#### No. 9579.

Court of Civil Appeals of Texas. Austin.
July 24, 1946.

A. H. Lumpkin, of San Antonio, for appellant.

Mark V. Fuchs and Schleyer & Bartram, all of New Braunfels, for appellees.

McCLENDON, Chief Justice.

Appeal from two interlocutory orders:

1. Overruling a plea of privilege seeking to change the venue to Bexar County, where defendant resided; and

2. Granting a temporary injunction pendente lite.

Upon the Plea of Privilege.

The original petition alleged: Plaintiffs owned a ranch in Kendall County which

adjoined a ranch of defendant in Comal County, over which latter plaintiffs owned a roadway leading to the New Braunfels-Boerne road, with gates where the road entered and left defendant's land. "Said defendant in Comal County, Texas, unlawfully locked said gates * * * and * * * in keeping said gates locked, which he had no legal right to do" deprived plaintiffs of the use of their said road, to their great and irreparable damage. The prayer was for a temporary injunction pendente lite and upon final hearing for a permanent injunction restraining defendant from keeping the gates locked, for damages, costs "and for such other and further relief in law and in equity to which they may be entitled."

In the same instrument, following and subject to the plea of privilege, defendant filed an answer consisting of exceptions, general denial and pleas to the merits, in which it was contended that plaintiffs had no legal rights in the roadway, but only permissive rights therein, allowed as a neighborly act on defendant's part, and subject to withdrawal at any time by him. Plaintiffs' affidavit controverting the plea asserted ownership in the road, its location in Comal County, the interference by defendant in its use by locking the gates; that defendant was questioning plaintiffs' title and claim to the roadway or easement; that the action involved plaintiffs' claim to title, use and enjoyment of real estate situated in Comal County; and that venue of the suit lay in that county by virtue of Sec. 14 of Art. 1995, Vernon's Ann.Civ.St. In a joint hearing on the plea and application for temporary injunction, defendant vigorously contested plaintiffs' right to the roadway easement, asserting that whatever rights plaintiffs had therein were only permissive. The same is true of appellant's brief.

It is manifest that the suit involves title to the easement, which constitutes an interest in land, and that the venue was properly laid in Comal County under Art. 1995, Sec. 14, Vernon's Ann.Civ.St. Posey v. Williamson, Tex.Civ.App., 134 S.W.2d 335, and cases there cited. The cases are not in point which hold that an injunction suit brought only to protect a right of way easement from infringement, where the right to the easement is conceded and not involved in the suit, does not fall within the purview of Art. 1995, Sec. 14.

## Upon the Temporary Injunction.

Appellant's first point in this regard is that the injunctive order was void because there was no requirement therein for bond as provided in Rule 684, Texas Rules of Civil Procedure. The pertinent facts shown by the record are:

The suit was filed January 31 (all dates 1946). The same day temporary restraining order was granted upon filing $100 bond and hearing on application for temporary injunction set for February 12. Defendant's answer to application for temporary injunction and to suit on the merits, noted above, was filed February 6. Joint hearing upon the plea of privilege and application was had May 28, and on the same day and in the same order the plea was overruled and the temporary injunction granted, no mention being made of an injunction bond. Single appeal bond covering both orders was filed May 31 and the record and statement of facts were filed in this court on June 12. A supplemental transcript ordered prepared by the trial court shows the following proceedings subsequent to the order of May 28: Plaintiffs filed on June 18 application for nunc pro tunc order requiring plaintiffs to file an injunction bond in amount to be fixed by the court; the application alleging that the omission of such requirement from the original order was through inadvertence and mistake. This application was set for hearing June 22 and defendant notified thereof. June 20 defendant filed an answer to this motion containing a special exception to the effect that all jurisdiction over the matter was transferred to this court; and an answer to the merits of the application asserting that the order was void under Rule 684 TRCP for failure to require an injunction bond. June 22, upon hearing, an order was entered amending the previous order, by requiring an injunction bond in the sum of $500. This bond was filed on the same day.

The contentions of appellant on this issue are that the original order was void; that the trial court had no jurisdiction over the matter; and that this court

should therefore dissolve the temporary injunction. It may be conceded that these contentions would be correct if the order had been granted ex parte. But here the order was granted after notice and upon full hearing in which both parties participated. In such case we think clearly that the order was voidable only and subject to amendment or correction. This view is supported by the following cases with the holdings in which we fully concur: El Campo Light, etc., v. Water, etc., Galveston, 63 Tex.Civ.App. 393, 132 S.W. 868; Oil Lease, etc., v. Beeler, Tex.Civ.App., Dallas, 217 S.W. 1054, error refused; Bettinger v. North Ft. W., etc., Tex.Civ.App., Ft. Worth, 278 S.W. 466. We adopt the discussion of this subject in Judge Buck's opinion in the last case (278 S.W. at page 471, col. 1).

Moreover, we think express authority for amending the order in the stated respect was authorized by the second proviso in Rule 434, Texas Rules of Civil Procedure. The wording of this proviso is identical with a portion of prior CCA Rule 62a; its incorporation in the new rules giving it the force of a statutory rule of procedure. The proviso reads:

"* * * if the erroneous action or failure or refusal of the trial judge to act shall prevent the proper presentation of a cause to the Court of Civil Appeals, and be such as may be corrected by the judge of the trial court, then the judgment shall not be reversed for such error, but the appellate court shall direct the said judge to correct the error, and thereafter the Court of Civil Appeals shall proceed as if such erroneous action or failure to act had not occurred."

This language fits the instant case with glovelike precision. The erroneous action here complained of was the "failure * * * of the trial judge to act"; that is, failure to provide for an injunction bond. This error was manifestly "such as may be corrected by the judge of the trial court." It was therefore within the province of this court to "direct the said judge to correct the error, and thereafter * * * (to) proceed as if such * * * failure to act had not occurred." The judge having already done what the direction of this court would otherwise require, action upon the part of this court was thereby rendered unnecessary. The obvious purpose of this rule was to obviate the necessity of reversal and new trial where the erroneous action could be cured by the trial judge without detriment to the substantial rights of the parties. Here there had been a full hearing and action by the trial judge, upon the merits of the application for temporary injunction. To reverse this order merely for the absence of an injunction bond, which had later been given would require a new hearing, new order, new bond, new appeal—an outlay in time of the parties and trial judge, and in expense to the parties and the State—without serving any useful purpose. A procedure which would admit of such results should be discountenanced, and a rule designed as a preventive of such results should be given a liberal construction in effectuating its obvious objectives.

These views were practically conceded in the argument, but it was still insisted that the cost of the appeal should be taxed against appellees. Other than those costs incurred in correcting the bond omission error, there is no item of cost which was not incurred in the plea of privilege proceeding. The orders, notices and hearing thereon as well as the appeal bond were equally applicable to both orders. There is no item of such costs which would be eliminated in an appeal from the plea of privilege order alone. Under these circumstances only the costs involved in the proceedings set forth in the supplemental transcript should in any event be taxed against appellees. This is especially true, since we are considering appellant's appeal from the temporary injunction order on its merits, and, as noted below, affirming that order. We would have a different issue, probably calling for a division of the costs between the respective appeals from the two orders, if the injunction order were reversed.

The propriety of the temporary injunction is not dependent upon the ultimate merits of the controversy regarding the existence vel non of the easement. What

is involved in an appeal from a pendente lite injunctive order is whether the trial judge abused his discretion in preserving the status quo as of the date the controversy arose. In the present instance that date was immediately preceding the time the gates were locked. That issue is dependent upon whether there was a bona fide dispute as to the existence of the easement asserted by plaintiffs; and whether the injunctive relief was essential to preserve the continued exercise of that right pending adjudication of the controversy over the legal existence of the right. See Vinson v. Winters, Tex.Civ.App., 178 S.W.2d 142, and Burke v. Shafer, Tex.Civ. App., 189 S.W.2d 444, error refused, W. M., and authorities therein cited.

The record shows the following: The Carleton tract, known as the Schwartz tract, consisted of 614.1 acres. It was located in Comal County. Its southern boundary was the Boerne-New Braunfels road; and its northern boundary in part was the southern boundary of land owned by plaintiffs or some of them. The Schwartz tract was owned by Alfred Engal from 1931 until April 1943, when he sold it to defendant. For over forty years prior to 1939 or 1940, plaintiffs and their families had used a roadway over the Schwartz tract as a passageway to and from their land. In October 1939 plaintiffs made a verbal agreement with Engal for a new road along a straight route over the tract, upon consideration of $20 paid by plaintiffs to Engal, and the further consideration that plaintiffs relinquish all right to the old roadway; would clear the new right of way; construct the new road thereon; build substantial gates where the new road entered and left defendant's premises; maintain the road and gates and permit Engal to use that part of the road leading to his premises. Plaintiffs performed their part of this agreement, expending therein over $500. These facts were clearly sufficient to warrant a temporary injunction restraining any unreasonable interference with the use of the road.

Appellant contends that locking the gates was not an unreasonable interference with the use of the roadway under the circumstances, for the reason that (while denying the legal right of plaintiffs to use the roadway) he offered plaintiffs keys to the gates as a neighborly act. It was shown in this connection that before locking the gates defendant said to one of the plaintiffs, "Mr. Dierks, here is a pair of keys; I'm going to lock the gates with your permission." The present controversy arose over refusal of this permission. There was conflict in the testimony regarding the extent of inconvenience to plaintiffs from having the gates locked even if they were furnished with keys; and of the inconvenience to defendant in not having the gates locked and the consequent loss of stock. The question whether the locking of the gates and furnishing plaintiffs with keys was an unreasonable interference with use of the roadway by plaintiffs was clearly a fact issue for the trial judge to resolve. The right of the owner of the servient estate to have his property protected by gates, where none existed before, and where such gates already existed to lock them and furnish keys to the owner of the dominant estate, has been a fruitful source of litigation and not infrequently of more or less violent controversy. Full treatment of the legal aspects of the subject with citation of authorities is given in 28 C.J.S., Easements, § 98, pp. 781 et seq., under the heading "Gates." In Note 17, p. 782, it is said:

"Ordinarily locked gates across a way constitute an unreasonable burden which will not be permitted, even though the way owner is furnished with a key. (Citing supporting cases.) (2) Under certain circumstances, however, locked gates may be permitted where the way owner is furnished a key."

We hold that the trial judge did not abuse his discretion in granting the temporary injunction.

The two orders appealed from are affirmed. The costs incident to the proceedings shown in the supplemental transcript are assessed against appellees. All other costs are assessed against appellant.

Affirmed.