**Lynn STOUT et al., Appellants,**

v.

**Marie CHRISTIAN et al., Appellees.**

**No. 12999.**

Court of Civil Appeals of Texas, Austin.

Jan. 9, 1980.

Maxwell Bryant Stout, Austin, for appellants.

David W. Hilgers, Hilgers, Watkins & Hays, Austin, for appellees.

O'QUINN, Justice.

Marie Christian, as owner of a tract of land in Travis County, and Jerry Grant and Ed Siegmund, lessees of the tract, brought this lawsuit for damages and to enjoin Lynn Stout, Forrest Grahmann, and Andrew Burchfield, owners of tracts adjoining the Christian property, in using a recognized easement across the Christian land, from cutting fences, leaving gates open, breaking locks, and committing other acts alleged to interfere with use by Christian and her lessees of their land.

The trial court, after hearing on temporary injunction, enjoined defendants as prayed for, and authorized plaintiffs "to place chains and locks securing the gates which provide access onto" the easement across the Christian tract by which defendants reach their lands from the public highway.

Defendants below have appealed and bring the single point of error that the " . . . trial court abused its discretion by permitting locked gates across the right of way in question in its temporary injunction." We will overrule the point of error and affirm the judgment of the trial court.

All land involved in this action originally was owned by Stark Washington. Upon his death, the Washington land was divided among heirs by a partition deed executed in 1945. Two of the tracts, which comprise the lands directly involved in this suit, were held under the partition deed by Althea T. Roberts, who later was succeeded in title by Appellee Christian, and by Myrtle M. Harwell, whose successors in title are Appellants Stout, Grahmann and Burchfield, owners of three separate portions of the Harwell land.

Under the original partition deed the owner of the tract now owned by Christian was required to give " . . . the right of ingress and egress across her property from the vicinity of Elm Branch to present or subsequent County Highway *or a thirty foot right of way along her west boundary as she may elect."* (Emphasis added). Subsequently, in 1954, the then owner of the Christian tract elected to give a thirty-foot right of way along her west boundary to the owner of the lands now owned by appellants.

By the deed of easement of 1954 the owner of the tracts to be served by the easement gained the right to enter upon the lands of the grantor " . . . and to place, construct, operate, repair and maintain a road, including necessary lateral drainage ditches, but wholly within the limits of the right-of-way thirty feet in width adjoining and paralleling the westerly boundary . . . [of grantor's tract] and extending from the boundary fence line separating . . . [the two tracts] to the Public Road, presently designated Texas Highway No. 71."

The easement deed further provided: "In granting this Easement . . . it is understood that all costs of initial construction of roads, gates, etc. and subsequent repair and maintenance of same shall be borne entirely by Grantee; that *gates at the entrance and exit* to . . . [grantor's tract] shall be of *livestock proof construction* and *kept closed when not in actual use* ; and that said right-of-way shall not be fenced off from the remainder of . . [grantor's tract] by Grantee." (Emphasis added).

It is clear from the deed of easement that the parties recognized the Christian tract was suitable for raising livestock and that it likely would be devoted to such use. The lessors of the Christian tract used the land for raising cattle, requiring that gates at the entrance and exit to the Christian tract be " . . . of livestock proof construction and kept closed when not in actual use . . . " as provided in the deed of easement.

Trouble between the opposing parties began with the cutting of a gap in the Christian fence opening to the highway, but at a place in direct line with the designated easement. Christian and her lessees protested, but appellants insisted that the ease-

ment was not to be enclosed by gates at either the entrance or the exit. Thereafter gates were left open, and when locks were placed on the gates, the chains or locks were cut and the gates left open. One event succeeded another until the parties obviously could not agree on any arrangement satisfactory to both. This lawsuit followed.

The Supreme Court held in 1953 that "To warrant the issuance of the writ [of temporary injunction], the applicant need only show a probable right and a probable injury; he is not required to establish that he will finally prevail in the litigation." *Transport Co. of Texas v. Robertson Transports*, 152 Tex. 551, 261 S.W.2d 549, 552 (1953). This Court in 1977 reasserted the rule stated in *Transport* in *Hickman v. Board of Regents of the University of Texas System*, 552 S.W.2d 616, 617 (Tex.Civ. App. Austin 1977, writ ref'd).

█ In the cause now on appeal, the partition deed of 1945 and the easement deed of 1954, taken together, clearly establish the probable right of Christian and her lessees to keep the gates closed at the entrance and the exits of the easement. The easement deed in 1954 explicitly provided that " . . . gates at the entrance and exit to . . . [the Christian tract] shall be of livestock proof construction and kept closed when not in actual use . . ." Appellees demonstrated probable injury caused by the open gates. The lessees were unable to buy cattle when the price was most favorable and let the stock run on the entire tract, but were compelled to keep the cattle penned and to feed the cattle while being kept in the smaller enclosure. Some of their cattle became sick, or died, under these circumstances. In effect appellees were denied use of the entire tract for cattle raising because the gates were left open, particularly the gate opening on the highway. With the probable right and probable injury shown, the trial court had broad discretion to determine the necessity of a temporary injunction. *Hickman v. Board of Regents of the University of Texas System, supra.*

By their single point of error, appellants contend that the trial court abused its discretion by permitting locked gates to be maintained across the easement. The trial court found that to assure that the gates at the entrance and the exists of the easement " . . . are closed when not in use, Plaintiffs shall be entitled to keep such gates under lock and key as long as keys are provided to Defendants; and that the entrances and exits of such right-of-way are now established."

In their position that it was error to permit locked gates, appellants place strong reliance on decisions by this Court in *Carleton v. Dierks*, 195 S.W.2d 834, 837 (Tex.Civ. App. Austin 1946, no writ), an appeal on temporary injunction, and in the same cause (203 S.W.2d 552, 556, writ ref'd n. r. e.), after grant of permanent injunction by the trial court. In both decisions this Court made it clear that decision turned on "The question whether the locking of the gates and furnishing plaintiffs with keys was an unreasonable interference with use of the roadway by plaintiffs [which] was clearly a fact issue for the trial judge [in the first appeal] to resolve," and for the jury to resolve in the second appeal. See 195 S.W.2d 837, col. 2, and 203 S.W.2d 556, col. 2.

It is true, as pointed out by appellants, that in both decisions this Court quoted from statements in Corpus Juris Secundum, one statement being that "Ordinarily locked gates across a way constitute an unreasonable burden which will not be permitted, even though the way owner is furnished with a key . . . " and the second statement being that "Under certain circumstances, however, locked gates may be permitted where the way owner is furnished a key . . . " 28 C.J.S. *Easements* § 98, pp. 781, *et seq.*, under the heading "Gates," footnote 17, p. 782.

In both decisions, this Court summarized the conflicting testimony introduced by the parties. In the first appeal this Court held " . . . that the trial judge [who resolved the fact question] did not abuse his discretion in granting the temporary in-

junction." In the second appeal, on permanent injunction, this Court held there was sufficient evidence to support the jury's finding that "the locked gates across the road in question constitutes an unreasonable interference with plaintiffs' use and enjoyment of said road, even though plaintiffs were furnished with keys."

In *Carleton* this Court recognized that under certain circumstances locked gates may be permitted when the owner of the easement is furnished a key. Under the facts of the cause on appeal, gates are expressly authorized and are required to be kept closed except when in actual use to enter or leave the easement. Appellee Christian, as owner of the servient estate has a right to use her property for such purposes as the land is reasonably suited. The deed of easement, as observed earlier, makes it clear that the grantor, in granting the easement, and the grantee, in accepting the deed, were in agreement that gates of "livestock proof construction" reasonably could be intended to protect the servient owner in pursing the business of raising cattle.

It is settled that when use of the servient estate is curtailed, or destroyed, by the manner in which the easement is used, the owner of the servient estate is subjected to an additional burden not within contemplation of the deed of easement. "The owner of the dominant estate cannot change or alter the character or extent of the easement, nor subject the servient tenement to an additional burden." *Ladies' Benev. Soc. of Beaumont v. Magnolia Cemetery Co.*, 268 S.W. 198, 215, affirmed 288 S.W. 812 (Tex.Civ.App.1926); 2 Lange, Land Titles & Title Examination, § 384 (1961).

Appellants, as dominant owners of the easement, were under an obligation to use the easement in such manner as not to interfere unreasonably with appellees' ability to use the Christian tract for grazing cattle. "An easement . . . gives no exclusive dominant right over the servient land unnecessary to the enjoyment of such easement, and the dominant owner (ease-ment owner) must make a reasonable use of the right so as not unreasonably to interfere with the property rights of the owner of the servient estate." *San Jacinto Sand Co. v. Southwestern Bell Telephone Co.*, 426 S.W.2d 338, 345 (Tex.Civ.App. Houston [14th Dist.] 1968, writ ref'd n. r. e.); *Texas-Louisiana Power Co. v. Webster*, 59 S.W.2d 902, 905 (Tex.Civ.App. Dallas 1933), affirmed 127 Tex. 126, 91 S.W.2d 302 (1936).

Appellees were using the Christian tract for pasturing cattle. Gates were erected but repeatedly were left open. To remedy this situation, the gates were locked and keys given to appellants. The locks subsequently were cut off. Appellants blamed the vandalism on third persons. The parties here involved could not agree on erection of a fence to enclose the easement. Fences were cut, or the gates left open, so much of the time that Christian and her lessees were forced to cease using the land for pasturing livestock.

The record is such that the trial court reasonably could have determined that appellants' use of the easement substantially curtailed Christian's use of her property. To provide in the writ of injunction merely for closure of the gates would serve only to subject the court to repeated contempt proceedings between the parties, and the writ would be virtually unenforceable against unknown third parties using the easement.

A trial court does not abuse its discretion " . . . in granting a temporary injunction when such relief is necessary to prevent multiplicity of suits, avoid vexatious litigation and to prohibit the use of judicial processes for the purpose of harassment." *State v. Cook United, Inc.*, 469 S.W.2d 709, 711 (Tex.1971); *University of Texas v. Morris*, 162 Tex. 60, 344 S.W.2d 426 (1961); *Repka v. American National Insurance Co.*, 143 Tex. 542, 186 S.W.2d 977 (1945). In equity cases, such as this, the facts must dictate the result. In *Carleton*, the trial court determined that the facts did not warrant the use of locks. In this case, the facts are such that the trial judge reasonably could have determined the necessity

of locks to preserve proper use of the servient estate pending a final determination of the rights of the parties.

In summary, Christian had a right to the use of her property without unreasonable interference by appellants. *San Jacinto Sand Co. v. Southwestern Bell Telephone Co., supra.* The trial court found that merely ordering the gates closed would not protect this right. "Equity will not suffer right to be without a remedy." *Chandler v. Welborn,* 156 Tex. 312, 294 S.W.2d 801, 807 (1956); 22 Tex.Jur.2d *Equity* § 36 (1961). Ordering the gates locked was within the trial court's equity powers.

■ In reviewing the matter of a trial court's exercise of discretion in cases of this nature, we recognize that it is settled " . . . that the granting or refusal of a temporary injunction is within the sound discretion of the trial court and is not reviewable upon appeal unless it clearly appears from the record that there has been an abuse of such discretion." *Harris County v. Bassett,* 139 S.W.2d 180, 183 (Tex.Civ. App. Galveston 1940, writ ref'd); *International Ass'n of Machinists Lodge 1488 v. Downtown Employee's Ass'n,* 204 S.W.2d 685, 686 (Tex.Civ.App. Galveston 1947, writ ref'd n. r. e.); *Hickman v. Board of Regents of the University of Texas System, supra.*

■ An appellate court may reverse the trial court only if, after searching the record, it is clear that the trial court's decision was arbitrary or unreasonable. *Landry v. Travelers Insurance Company,* 458 S.W.2d 649, 651 (Tex.1970). To determine whether there has been an abuse of discretion, we are required to look at all the disputed evidence and " . . . consider only that most favorable to the plaintiffs. Further, of all reasonable inferences which may be drawn from such evidence, we are required to adopt only those, if any, favorable to plaintiffs." *Hotel & Restaurant Employees' International Alliance & Bartenders' International League of America v. Longley,* 160 S.W.2d 124, 126–7 (Tex.Civ. App. Eastland 1942, no writ). "If there is some evidence of substantive and probative character we may not find that the trial

court abused its discretion." *Matuszak v. Houston Oilers, Inc.,* 515 S.W.2d 725, 728 (Tex.Civ.App. Houston [14th Dist.] 1974, no writ); *City of Houston v. Southwestern Bell Telephone Co.,* 263 S.W.2d 169 (Tex. Civ.App. Galveston 1953, writ ref'd).

■ The record shows that Ed Siegmund, a lessee of the Christian tract, leased the property to run cattle; that Siegmund could not use the pasture for grazing cattle because gates were left open or fences were cut; that one of the appellants cut through the fence and left the gap open with the knowledge that Siegmund intended to run cattle on the lease; that Siegmund placed a gate over the open area cut through the fence and that thereafter the gate repeatedly was left open; that Siegmund could not turn his cattle out of the pens because of the open gates; that locks were placed on the gates to keep them closed, and afterwards the locks mysteriously were cut off; that, subsequently, the gates continued to be left open; that by reason of gates left open Siegmund is required to keep his cattle penned to prevent them from getting out on the highway; that Siegmund is required under the circumstances to haul water and provide feed for the penned cattle; and that Siegmund is deprived of the use of 174 acres of the lease because of the opened gates."

■ We find that the trial court's decision to permit the gates to be locked, with keys furnished appellants, is supported by probative evidence and is not arbitrary or unreasonable. "The mere fact or circumstance that a trial judge may decide a matter within his discretionary authority in a manner different from what an appellate judge would decide if placed in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Jones v. Strayhorn,* 159 Tex. 421, 321 S.W.2d 290, 295 (1959); *Southwestern Bell Telephone Co. v. Johnson,* 389 S.W.2d 645 (Tex.1965); *Landry v. Travelers Insurance Company, supra.*

We hold that the trial judge did not abuse his discretion in granting the temporary injunction.

The order appealed from is affirmed.