**Joe Mike EGAN, Jr., and Byron F. Egan, Appellants,**

v.

**Fred WOODELL, Appellee.**

No. 04–86–00285–CV.

Court of Appeals of Texas, San Antonio.

Oct. 22, 1986.

Rehearing Denied Nov. 20, 1986.

Joe Mike Egan, Jr., Kerrville, pro se.

Robert A. Denson, Kerrville, for appellee.

Before CADENA, C.J., and BUTTS and DIAL, JJ.

## OPINION

DIAL, Justice.

This is an interlocutory appeal from an order granting a temporary injunction.

Under the terms of the order, appellants, Joe Mike Egan and Byron F. Egan, are prohibited from interfering with or obstructing in any manner appellee Fred Woodell's right to free, open, and uninterrupted access to his real property in Gillespie County via a twenty-five foot wide road located on the Egan Ranch until judgment is entered by the trial court. This road (hereinafter referred to as the Egan Ranch Road) runs along the southern boundary of the Egan property and connects the dead-end of the public road to appellee's property.

Both the Egan Ranch and the 275 acre tract owned by appellee were under common title until 1945, at which time the 275 acre tract was first separated from the other acreage. At that time, because there was a hill immediately inside what is now the public road entrance, the only way to take a vehicle to the 275 acre tract was to enter through a third party's land, the Goode tract. Wagons or vehicles would go about a third of the way back on the Goode tract, then go through a gate into what is now the Egan property and continue the last two-thirds of the way inside the Egan southern fence line. At the time of partition, there was no gate through which to enter the Egan tract from the public road, however, the fence was made so that it could be taken down, and a person on horseback could then enter through the gap. A gate was put in at this spot by appellants' father, J.M. Egan, Sr., in 1959. J.M. Egan, Sr. also leveled the hill, which was just inside his boundary line, and built a narrow road in order to service water gaps by vehicle.

The 275 acre tract went through a number of owners and was purchased by appellee in 1981. Prior to this, appellant J.M. Egan, Jr. had had a cattle guard installed and the gate removed. About nine months after appellee acquired his tract, appellant Byron Egan wrote him, saying that appellee was welcome to continue using and maintaining the road in question, but strictly on a permissive basis, as his predecessor had been permitted to do. Appellee wrote

back in response but made no mention of the road.

On March 10, 1986, J.M. Egan, Jr. erected a swinging bar gate across the cattle guard. Appellee claims the purpose of the bar gate is to obstruct his access to his property, as he has no other access to it from a public road other than via the Egan Ranch Road. Appellants claim that the purpose of the bar gate is to prevent their bulls from escaping by jumping the cattle guard, which has been going on since early 1986. When closed, the bar gate causes anyone desiring to enter the Egan Ranch to first stop, walk across the cattle guard, and open the gate before being able to drive across.

We affirm, because we find that the trial court did not abuse its discretion in granting the temporary injunction.

In point of error one, appellants urge that the trial court committed reversible error by enjoining Egan from closing the bar gate because, as a matter of law, appellee can have, at most, no more than a right to a temporary easement, which even if established, could not vest in him any right to tell Egan how to run his ranch. In subpoints of error one (a) through (d), appellants argue that evidence adduced at the temporary injunction hearing rules out appellee's theories of easement by prescription, by implication and by estoppel, and that appellee may at most have a temporary easement by necessity.

▇▇▇▇ To warrant the issuance of a temporary injunction, the applicant need only show a probable right and a probable injury; he is not required to establish that he will finally prevail in the litigation. *Transport Co. of Texas v. Robertson Transports, Inc.*, 152 Tex. 551, 261 S.W.2d 549, 552 (1953). The merits of the underlying case are not presented for appellate review. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978). Where the pleadings and the evidence present a case of probable right and probable injury, the trial court is clothed with broad discretion in determining whether to issue the writ. *Transport Co. of Texas v. Robertson Transports, Inc.*, 261

S.W.2d at 552. The only question on appeal is whether the trial court clearly abused its discretion in making this determination. The reviewing court may not substitute its judgment for that of the trial court. *Davis v. Huey*, 571 S.W.2d at 862.

One Texas court has written:

It is the settled law in this State that the propriety of a temporary injunction against interference with an easement does not depend on the ultimate merits of the controversy regarding the existence vel non of the easement, and that the question upon appeal from a pendente lite injunctive order is whether the trial judge abused his discretion in preserving the status quo as of the date on which controversy arose.

*Richter v. Hickman*, 243 S.W.2d 466, 468 (Tex.Civ.App.—Galveston 1951, no writ).

The controlling question presented is whether the evidence disclosed a bona fide dispute as to the existence of an easement. Testimony was adduced at the hearing showing continuous use of part, if not all of the Egan Ranch Road by Woodell and previous owners of the 275 acre tract. Testimony also showed that there is no other existing access to Woodell's property and that both Egan and Woodell have expended sums of money to maintain the road. Further, some of the witnesses testified that at the time of the severance from the common owner, the first one-third of the route to the 275 acre tract consisted of either a trail for a man on horseback on what is now the Egan property or a road for wagons and vehicles on a third party's property, which road is no longer existing.

▇▇▇▇ While the evidence of the apparent use of the claimed easement is unsatisfactory in that it does not show that the present use was exactly the same use existing at the time of the grant from the common owner, the trial court found that Woodell "will probably prevail on the merits at a trial before a jury." Bearing in mind that the injunction merely preserves, pending final hearing, the status as it was before the road was obstructed, we are not

disposed to disturb such finding of the trial court. We are not prepared to say that its discretion was abused in so holding. Nor do we express an opinion as to whether or not the evidence in the present record would support a final judgment establishing an easement of any type in Woodell's favor.

Subpoints of error one (a) through (d) are overruled.

In subpoint of error one (e) appellants assert that even were the court to find that an easement existed, Woodell still could not complain about the gate because the servient estate may be burdened no more than is necessary to provide an outlet. Appellants cite *Stout v. Christian*, 593 S.W.2d 146, 150 (Tex.Civ.App.—Austin, 1980, no writ) for the proposition that dominant estate owners of an easement are "under an obligation to use the easement in such manner as not to interfere unreasonably with [the servient estate owners'] ability to use the ... tract for grazing cattle." We agree with the proposition that the dominant estate owner "must make reasonable use of the right so as not unreasonably to interfere with the property rights of the owner of the servient estate." *Id.*

However, the *Stout* case is distinguishable from the case before us. In *Stout*, a temporary injunction was issued to restrain the dominant estate owners from such acts as cutting locks off of the gates, leaving gates open and cutting fences. The effect of these acts was to deny the servient estate owners the use of their entire tract for cattle raising. Furthermore, the original partition deed in *Stout* expressly provided for the easement and for construction of roads and livestock-proof gates to be kept closed when not in actual use.

In contrast, the case at bar involves an injunction issued to restrain the putative servient estate owner from closing his gate and no express easement. Appellee, the putative dominant estate owner, has not affirmatively acted to cause injury to appellants or to interfere with their property rights, unlike *Stout* and other cases cited by appellants.

Related to subpoint one (e) is point of error two, in which appellants contend that Woodell has demonstrated neither legal nor equitable wrong imposed on him by the closing of the gate. We find this point to be without merit.

Testimony at the hearing showed that in order to open the gate from the public road, Woodell or his guests have to first walk across the cattle guard, a feat that could prove disastrous for those with less than excellent coordination and sense of balance or those simply wearing shoes inappropriate for the task. Further, Woodell testified that a lady trying to open the gate had turned her ankle. This is adequate evidence of imposition of an equitable wrong. The facts are such that the trial judge reasonably could have determined that the combination of the bar gate and the cattle guard was similar to a locked gate in that it interfered with appellee's access to and use of his property. Point of error two and subpoint one (e) are overruled.

We do not address appellants' points of error three and four as they are not necessary to disposition of the appeal. TEX.R. APP.P. 90(a).

The function of a temporary injunction is to hold the subject matter of the suit in status quo until the final determination of the main suit on its merits. The "status quo" to be preserved by temporary injunction is "the last, actual, peaceable, noncontested status which preceded the pending controversy." *Transport Co. of Texas v. Robertson Transports, Inc.*, 261 S.W.2d at 553–54.

The status quo in this case was access to Egan Ranch Road over a cattle guard with no gate or similar obstruction. We find that the trial court did not abuse its discretion in granting the temporary injunction to maintain this status.

The judgment is affirmed.

CADENA, Chief Justice, dissenting.

I disagree. The undisputed evidence shows that maintenance of the gate is nec-

essary in order to prevent appellants' cattle from wandering from appellants' land and onto lands of appellants' neighbors, who complained to appellants concerning their failure to control the cattle. The injunction clearly bars appellants from reasonably using their land for the purpose of grazing their cattle.