In the Matter of the MARRIAGE OF Nancy Morrow EDWARDS and James R. Edwards and in the Interest of Robert Karl Edwards, a Minor.

No. 07–90–0007–CV.

Court of Appeals of Texas, Amarillo.

Feb. 22, 1991.

Rehearing Overruled March 27, 1991.

Ralph Brock, Lubbock, for appellant.

Brown, Harding, Bass, Fargason & Rice, Clifford W. Brown, Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and POFF, JJ.

REYNOLDS, Chief Justice.

By four points of error, James R. Edwards attacks a modification order increasing child support. He contends that (1) the trial court had no power to modify his child support obligations because they were the product of contract between the parties, and that the court abused its discretion in ordering the modification because (2) the evidence was legally and factually insufficient to show material or substantial change in circumstances, (3) the evidence was legally and factually insufficient to show the increase was in the best interest of the child, and (4) the reason stated by the trial court for increasing child support above that indicated by the guidelines contained in the Texas Family Code section 14.055 (Vernon Supp.1991) is expressly prohibited by statute. We will overrule the first three points, sustain the fourth point, and reverse and remand.

James (Jim) R. Edwards and Nancy Morrow Edwards were divorced by a March 2, 1984 final decree, in which there was the approval and incorporation by reference of the couple's contractual Agreement Incident to Divorce and Child Support and Visitation Rights. Upon divorce, Nancy became managing conservator of the couple's two minor children, Amy, age 16, and Karl, age 11.

Jim was obligated to pay, and did pay, an average of approximately $700 per month child support for Amy and Karl. Then, beginning September 1, 1986, the date Amy reached age 18, Jim was to pay $400 per month child support for Karl until his 18th birthday on May 17, 1990.

On September 10, 1986, Nancy filed her suit to construe the agreement incident to divorce and for a modification of child support payments. She requested construction of the terms of a trust fund for Amy's education established by the couple during their marriage and an increase in child support for Karl to $1,000 per month. Three years later, this cause was severed and a hearing was held before a court master on the issue of modification of child support.

The court master's recommendation contains the findings that the amount of net resources available to Jim is over $4,000 per month, that the amount available to Nancy is $2,500 per month, that the percentage applied under the child support guidelines is 20%, that the reason the amount of support ordered by the court varies from the amount computed by applying the percentage guidelines is "Mr. Edwards [sic] support provided in addition to ordered support," and that child support is raised to $1,200 per month beginning November 1, 1989. Additionally, Jim was ordered to pay court costs and attorneys' fees.

Nancy appealed from the court master's recommendation to contest the finding, among others, that the support provided by Jim in addition to the ordered support was a reason for varying from the amount computed by applying the percentage guidelines. After a hearing, the trial court entered its order adopting the court master's recommendations, from which Jim perfected this appeal.

■ Jim initially contends that his only obligation to pay child support is contractual and, therefore, not subject to modification by the trial court. He points out that the final decree of divorce contained no order that appellant pay child support or any specific amount of child support; instead, the order merely stated

IT IS THEREFORE ORDERED that the Agreement Incident to Divorce naming Petitioner as Managing Conservator, as to the support of the minor children, be and is hereby approved and incorporated into this Decree by reference.

This language, he asserts, does not constitute a decree that he pay child support. It follows, he continues, that his only child support liability is contractual, stemming from the agreement incident to divorce. Then, he concludes, since this agreement is governed by the common law of contracts, *Hutchings v. Bates*, 406 S.W.2d 419, 420 (Tex.1966), the court has no authority to modify it in the absence of fraud, accident

or mistake except by consent of the parties. *Morris v. Morris,* 406 S.W.2d 550, 551 (Tex. Civ.App.—Amarillo 1966, no writ).

Yet three years after its *Morris* decision, this Court, as graphically displayed in *Duke v. Duke,* 448 S.W.2d 200 (Tex.Civ. App.—Amarillo 1969, no writ), exemplified the split of authority on this issue and held, conformably with other authorities, that the trial court has authority to reduce or increase the child support contracted for by the parents at the time of their divorce. Because of our view that the *Duke* decision is better grounded on parent-child relationship principles, we are not disposed to depart from its holding.[1]

The Texas Family Code encourages amicable settlements between parties to a parent-child relationship suit. Tex.Fam.Code Ann. § 14.06(a) (Vernon Supp.1991).[2] To that end, the Code provides that if the court finds the agreement of the parties "is in the child's best interest," the terms of the agreement shall be set forth in the decree, and the parties shall be ordered to perform the terms, which are made enforceable by all remedies available for enforcement of a judgment, but are not enforceable as contract terms unless the agreement so specifies. Sec. 14.06(b)–(d) (Vernon 1986). Subsequent sections authorize the court to modify the portion of the decree that provides for child support and, significantly, these sections place no limit on the modification authority in the event a child support agreement, contractual or otherwise, is incorporated in the decree. Sec. 14.08(a) (Vernon 1986); sec. 14.08(c)(2) (Vernon Supp.1991).

Thus, although the contractual agreement of Jim and Nancy is incorporated in the decree of divorce pursuant to section 14.06, that section's provisions do not extinguish or limit the court's power to modify the support order to provide for the best interest of the child. *Huckeby v. Lawdermilk,* 709 S.W.2d 331, 333 (Tex.App.—Eastland 1986, no writ). Consequently, the trial

court had the power to modify the child support provisions incorporated into the decree of divorce. *Duke v. Duke,* 448 S.W.2d at 203. The first point of error is overruled.

By his second point of error, Jim characterizes the evidence as legally and factually insufficient to support an increase because, he contends, Nancy failed to show any material or substantial change in circumstances. *See* sec. 14.08(a) (Vernon 1986); sec. 14.08(c)(2) (Vernon Supp.1991). At the time of the divorce in 1984, guidelines to aid the courts in determining equitable amounts of child support had not been enacted, but their later enactment included the provision that

> [t]he court may consider the guidelines for the support of a child in this chapter to determine whether there has been a material and substantial change in circumstances under Section 14.08(c)(2) of this code that may warrant a modification of an existing child support order if the modification is in the best interest of the child.

Sec. 14.056(a) (Vernon Supp.1991). Under the guidelines, Jim's obligation for the support of Karl would be 20% of the first $4,000 of his net resources, plus any additional amounts of child support proven, depending on the needs of the child at the time of the order. Sec. 14.055(c) (Vernon Supp.1991).

The court confirmed, and Jim does not dispute, that his net resources exceed $4,000 per month. Computation in accordance with the guidelines produces a dollar figure of $800 per month, plus any additional amounts proven. Then, the guidelines fix Jim's child support obligation in an amount at least 100% greater than that contained in the divorce decree. In this situation, the trial court cannot be said to have abused its discretion by finding sufficient change in circumstances to justify a review of the original 1984 child support

---

1. That the *Duke* holding has its supporters and critics is illustrated in *Dorshaw v. Dorshaw,* 635 S.W.2d 783 (Tex.App.—Corpus Christi 1982, no writ).

2. All sections cited hereafter are sections of the Texas Family Code Annotated, referenced to Vernon's 1986 publication or 1991 supplement.

provisions. The second point of error is overruled.

■ Under his third point, Jim argues the trial court abused its discretion because the evidence was legally and factually insufficient to show the order increasing child support was in the best interest of the child. *See* Sec. 14.056(a) (Vernon Supp. 1991). The trial court's exercise of discretion in setting and modifying child support payments will not be disturbed on appeal without a showing of clear abuse. *Carpenter v. White*, 624 S.W.2d 618, 619 (Tex. App.—Houston [14th Dist.] 1981, no writ).

Abuse of discretion occurs when the trial court's action is arbitrary, unreasonable or based upon a gross and prejudicial error of law, *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 918 (Tex.1985), or is without reference to any guiding rules and principles. *Downer v. Aquamarine Operations, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). In making this determination, the reviewing court must view the evidence in the light most favorable to the actions of the trial court and indulge every legal presumption in favor of judgment. *Parks v. U.S. Home Corp.*, 652 S.W.2d 479, 485 (Tex.App.— Houston [1st Dist.] 1983, writ dism'd). Abuse of discretion does not exist where the decision is based on conflicting evidence, *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978), as long as there is some evidence of substantive and probative character to support the decision. *Stout v. Christian*, 593 S.W.2d 146, 151 (Tex.Civ.App.— Austin 1980, no writ).

An examination of the record reveals Nancy submitted detailed expense records for the years 1986, 1987, 1988, and 1989 through the date of the hearing. During these years, Nancy spent monthly amounts of $364.90 in 1986, $248.01 in 1987, $284.33 in 1988, and $372.55 in 1989 for Karl's school lunches, allowance, clothing, and medical expenses. Nancy segregated amounts spent solely for Karl's benefit from those spent solely to benefit her, which included her automobile expenses, or either of the two adult children, Amy and Randy.

When those segregated amounts are subtracted from Nancy's monthly expenditures during that four-year period, the remaining monthly expenditures producing a common benefit to Nancy and Karl were $2,982.13, $1,736.24, $2,340.19, and $2,310.67 for 1986, 1987, 1988 and 1989, respectively. These expenditures covered the costs of utilities, upkeep on the house and yard, groceries and household supplies, meals outside the home, gifts, entertainment, and other miscellaneous expenses.

Some of these expenditures were necessary living expenses, some were not; however, the duty to support is not limited to bare necessities. *Sohocki v. Sohocki*, 730 S.W.2d 30, 31 (Tex.App.—Corpus Christi 1987, no writ). In considering these expenses, the trial court reasonably could conclude that Jim's portion of Karl's support was inadequate, especially in light of the subsequent enactment of the guidelines.

Jim points to record evidence that Nancy has not needed to work outside the home since the divorce; that her savings and financial condition have not deteriorated; that, beginning September 1, 1986, the date Amy reached age 18, he paid $50 more per month for Karl than he had previously paid; and that Karl has not been deprived of anything since the divorce and might be better off without a few of the things he has had. Of course, the fact that Nancy has been able to support Karl fully without expending other than the interest on her savings and without taking a job outside the home does not lead to the conclusion that she should supplement Jim's child support of $400 per month beyond her own duty to support Karl. Each parent has a duty to support their minor children, *Matter of Marriage of Miller*, 600 S.W.2d 386, 389 (Tex.Civ.App.—Amarillo 1980, no writ), and child support provisions should reflect the respective abilities of the parents to contribute. *Cunningham v. Cunningham*, 515 S.W.2d 345, 346 (Tex.Civ.App.— Corpus Christi 1974, no writ). Moreover, in context, Nancy's testimony that Karl might

be better off without a few things clearly referred to luxuries provided by Jim.

Jim also points out that he has had Karl about 38% of the time and that he has provided $80,197.48 above his support obligation since the divorce. However, the trial court was able to consider evidence that $47,795.50 of that sum was expended on items directly related to golf, such as clubs, lessons, entrance fees, golf trips, and related matters.

Of the remainder, Jim spent just over $16,000 on a new car for Karl. The rest of the money was spent on haircuts, on food consumed while Karl was with Jim, or on clothes which Jim required Karl to leave behind when he returned to his mother, or to bring back with him when he returned to Jim. The trial court may well have concluded that only a small portion of the amount expended by Jim relieved Nancy from any necessary expense for Karl's support which she would have had to meet otherwise.

■ We agree with Jim's implied contention that he is not obligated to contribute to Nancy's support; yet, the real issue is the adequate support of Karl. *See Orsak v. Orsak*, 642 S.W.2d 566, 568 (Tex.App.— Dallas 1982, no writ). Given the facts in this cause, the court's determination that an increase was in the child's best interest was not so against the weight of the evidence as to constitute a clear abuse of discretion. The third point of error is overruled.

By his last point of error, Jim contends that the trial court abused its discretion by increasing the amount of child support beyond the guideline recommendations for a reason expressly prohibited by statute. The guidelines teach that where the obligor's net resources exceed $4,000 per month, the court should apply the applicable percentage to the first $4,000 of the obligor's net resources and, without further reference to the guideline percentages, may order additional amounts of child support "as proven, depending on the needs of the child at the time of the order." Sec. 14.055(c) (Vernon Supp.1991).

The trial court ordered Jim to increase his child support payments to $1200 per month. In affirming the court master's findings, the court adjudged that the reason the ordered amount varied from the percentage guidelines "because of the support provided by Mr. Edwards in addition to the ordered support." In this regard, the factors the trial court may consider in varying from or following the guidelines are: (1) the needs of the child; (2) the ability of the parents to contribute to the support of the child; (3) any financial resources available for the support of the child; and (4) the amount of possession of and access to the child. Sec. 14.052(b) (Vernon Supp.1991).

Although the reason given by the trial court is not expressly prohibited by statute, it clearly is neither a need of the child at the time of the order as required by section 14.055(c), nor a factor listed in section 14.052(b). Indeed, the reason given cannot be a cause to increase the amount of an existing child support order. Sec. 14.056(b) (Vernon Supp.1991). Rather, it is the general rule that a parent who freely takes responsibility for his or her children should be encouraged, *White v. Adcock*, 666 S.W.2d 222, 226 (Tex.App.—Houston [14th Dist.] 1984, no writ), not penalized by an increase in the amount of an existing child support order. Sec. 14.056(b), *supra*.

It follows that the history of voluntary support provided in excess of the amount ordered is not a proper basis upon which the trial court may vary the percentage guidelines. Variance from the guidelines predicated on this factor is such a gross and prejudicial error of law as to constitute an abuse of discretion. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d at 918. The fourth point of error is sustained.

Accordingly, the judgment of the trial court is reversed, and this cause is remanded.

POFF, J., concurs and dissents.

POFF, Justice, concurring and dissenting.

I concur with the majority that the judgment should be reversed. I dissent from

that part of the majority opinion overruling Jim's third point of error. For the reasons to be stated, I conclude that the trial court abused its discretion by ordering an increase in the amount of child support paid by Jim on the grounds that such an increase was "in the best interest of the child." It may seem paradoxical that an increase in child support might not be in the best interest of the child, but as will be shown, literal application of that standard can lead to results detrimental to the child's best interest.

The "best interest of the child" standard is inappropriate for determining whether to modify an existing child support order on grounds of material and substantial change in circumstances under section 14.056(a) of the Family Code. A literal reading of the statute would mandate that all motions to increase child support be granted, and all motions to decrease be denied, simply because an increase would always be in the best interest of the child, and a decrease would not. Examined in this light, the best interest of the child standard is meaningless.

Nancy advances a similar argument in her brief: "[I]f the Court was justified in increasing the child support being paid by [Jim], then it must clearly be implied from that justification that the increase was in the child's best interest." She argues that if Jim has the ability to pay more than the $400.00 per month required by their agreement, it is in the best interest of the child for him to do so. This is a dangerous rationale. If the child's best interest follows the financial fortunes of the obligor, then a change in circumstances reducing the obligor's ability to furnish support would necessarily result in an order reducing support, regardless of the best interests of the child. The "best interest of the child" standard would then belie its own name.

The standard that should be employed when determining the "best interest of the child" under section 14.056 is that of "ade-

quate support sufficient to meet the legitimate needs of the child."[1]  Under this standard, a two-step process should be employed when ruling on a motion to modify child support. First, the court should determine that a material and substantial change in circumstances had taken place. Second, the court should determine how and whether the requested modification of support would affect the legitimate needs of the child.

In this case, Jim argues there is no evidence an increase in support would positively affect the legitimate needs of his son. Jim also contends that even if his contribution were increased, the increase would not enhance the child's standard of living, but merely reduce the amount of Nancy's contribution. He points out that by increasing his support obligation, the trial court acted not in the best interest of the child, but in the best interest of his ex-wife.

Nancy contends that her son's needs for food, clothing, and general living expenses have increased since the child support agreement was approved by the court, and argues that inflationary pressures have increased the amount necessary to furnish adequate support. She does not specify any unusual expenses other than the ordinary living expenses which increase as a child matures. I find no evidence in the record that the child is not receiving adequate support. His legitimate needs have been met, and sometimes met to excess. Nancy does not contest this fact. The additional support will not go to meet the legitimate needs of the child, because no additional legitimate needs have been shown. Absent the "best interest of the child" standard of section 14.056(a), there is no reason to increase support because there has been no showing that the child is not receiving adequate support.

The significant question raised by this case is whether the statute authorizes an increase in contractual child support, absent proof of (1) a material and substantial

---

1. That is, the amount of support necessary to meet the legitimate needs of the child, taking into account the total support furnished by both parents and the ability of each parent to furnish support.

change in circumstances; and (2) the failure of current support levels to meet the legitimate needs of the child. Does the enactment of sections 14.055 and 14.056 allow Nancy to repudiate her contractual child support agreement on the grounds that it is not in substantial compliance with the guidelines of section 14.055? I decline to adopt that construction.

As noted by the majority, the trial court is not powerless to review, approve, and modify child support agreements. This power must be retained by the court to fulfill its obligation to protect the child's legitimate needs for support. If, due to subsequent material and substantial changes in circumstances, a contractual support agreement is not meeting the child's legitimate needs, it can and should be modified.

If, however, the child's legitimate needs are met and he or she is adequately supported, the trial court has no grounds to modify the contract entered into by the parties and previously approved by the court. I see no grounds for modifying the decree in this case. The record contains no evidence that the child is not receiving adequate support. I, therefore, conclude the trial court abused its discretion by increasing Jim's child support obligation. Accordingly, I would sustain Jim's third point of error, reverse the judgment of the trial court, and render judgment vacating the order modifying the decree.